Tracy L. Riley, Esquire
Attorney ID 006862008
Michael E. Riley, Esquire
Attorney ID  007511976
LAW OFFICES OF RILEY & RILEY
2 Eves Drive, Suite 109
Marlton, NJ  08053
(609) 914-0300

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

---

| | | |
|---|---|---|
| RANDI ZUPKO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | **COMPLAINT AND JURY DEMAND** |
| | : | |
| COUNTY OF OCEAN; | : | |
| SCOTT WATERS; ROBERT GREITZ; | : | |
| JOHN DOES 1 – 10; and | : | |
| JANE DOES 1 – 10, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

Plaintiff, Randi Zupko, by and through her attorneys, Law Offices of Riley & Riley, by way of Complaint against the defendants, both jointly and severally, respectfully state as follows:

## PARTIES

1. Plaintiff, Randi Zupko is a resident of Ocean County, New Jersey and an employee of the defendant.

1

2. Defendant, County of Ocean is a government entity chartered by the State of New Jersey and is located at 101 Hooper Avenue, Toms River, New Jersey.

3. Defendant, Scott Waters is the Director of Roads and Bridges for Ocean County. Defendant Waters is sued individually and in his official capacity.

4. Defendant, Robert Greitz is the Director of Employee Relations for Ocean County. Defendant Greitz is sued individually and in his official capacity.

5. Defendants, John Does 1 – 10 and Jane Does 1 – 10 are fictitious names heretofore – unidentified individuals who were responsible for the damages and/or harm to the Plaintiff outlined herein.

## JURISDICTION AND VENUE

6. Each and all acts of defendants were performed under the color and pretense of the constitution, statutes, ordinances, regulations, customs and usages of the United States of America, the State of New Jersey, and the County of Ocean.

7. The incidents which give rise to this cause of action occurred within this jurisdiction and over a period of years including one year of filing of this Complaint.

8. Venue is proper pursuant to 28 U.S.C. §1391, as all the defendants are residents of this district and/or all the acts or omissions which give rise to this cause of action occurred within this district.

9. Jurisdiction is proper pursuant to federal question jurisdiction, 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3)(4) and 42 U.S.C. §1983. Plaintiff further invokes the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. §1367.

## FACTUAL ALLEGATIONS

10. Plaintiff, Randi Zupko has been employed by the Defendant, County of Ocean since August 2004.

11. Plaintiff was assigned to the Roads Department.

12. At all times relevant herein, the Plaintiff has performed her duties up to or beyond the reasonable expectations of her employer.

13. Plaintiff has been subjected to intimidation, a hostile work environment, an offensive work environment, sexual abuse and sexual harassment.

14. Plaintiff suffers from the disability and disorder called vestibular neuritis and labyrinthitis.

15. When Plaintiff was hired in August of 2004, Defendant, Scott Waters was a General Supervisor in the Roads Department, located out at the Manahawkin garage.

16. In his position as a Supervisor, Defendant, Scott Waters became very flirtatious with the Plaintiff, Randi Zupko.

17. In 2014 after Plaintiff was transferred back to the Roads Department, Defendant, Scott Waters began by approaching Plaintiff and insisted that she fix his collar for him.

18. Ultimately, Defendant, Scott Waters escalated these flirtatious gestures.

19. In the fall of 2015, Defendant, Scott Waters through the Defendant, County of Ocean, purchased Plaintiff a pair of pink mock boots.

20. After Defendant, Scott Waters gave Plaintiff the pink mock boots, he began to harass her about them.

3

21. Defendant, Scott Waters sent Plaintiff a text message wanting her to send him a picture of her in the boots with nothing else on.

22. Plaintiff immediately contacted Craig John and told him about the text.

23. In April of 2016, Plaintiff was required to attend a purchasing conference in Atlantic City.

24. Plaintiff was sharing a hotel room with Ocean County Employee, Donna Specht.

25. Defendant, Scott Waters also attended the purchasing conference in Atlantic City in April of 2016.

26. While at this conference, Defendant, Scott Waters came to Plaintiff's room in the early morning hours to get his briefcase.

27. When Defendant, Scott Waters came to the room, Donna Specht was in the shower.

28. Plaintiff greeted Defendant, Scott Waters at the door fully dressed in a sweatshirt and leggings.

29. Defendant, Scott Waters attempted to kiss the Plaintiff.

30. Defendant, Scott Waters said that "No one would know."

31. Plaintiff immediately replied to Defendant Waters stating – "First you are my boss. Second, I am friends with your wife.  Third no!"

32. As soon as Donna Specht got out of the shower, Plaintiff told her what happened with the Defendant, Scott Waters.

33. Plaintiff and Donna Specht immediately got on the phone with Craig John and relayed what Defendant, Scott Waters said.

34. Plaintiff and Donna Specht later met with Steve Specht in Atlantic City and proceeded to tell Donna's husband what had transpired in the hotel room.

35. Defendant Waters was still not accepting no for an answer. In May of 2016 Defendant, Scott Waters sent Plaintiff a text message with the Thompson Square song – "Are you Gonna Kiss Me or Not".

36. However, that was not the only text message Defendant Waters with implying lyrics he sent the Plaintiff. Defendant Waters also sent a text message with the Buckcherry song – Crazy Bitch.

37. Defendant, Scott Waters told Plaintiff that these song lyrics reminded him of her.

38. Even after Plaintiff's repeated rejection, Defendant Waters continued to be flirtatious with the Plaintiff.

39. Defendant Waters insisted that Plaintiff accompany him in a county vehicle to various jobs that the Roads Department were working on.

40. Defendant Waters used the excuse that he needed to take the Plaintiff, "to get paperwork."

41. Defendant Waters used this opportunity to have the Plaintiff alone in the car to be flirtatious with her.

42. The Plaintiff now is a single mother of two little girls and fearful of losing her job.

43. Plaintiff informs Defendant Waters she is dating someone within the Roads Department.

44. Plaintiff thought this would end Defendant Waters inappropriate harassing behavior.

45. During this time period, the Department Head was Tom Curcio.

46. Defendant Waters became very upset with the Plaintiff when she told him she was dating a co-worker.

5

47. Defendant, Scott Waters stated, "Tom is going to be pissed, you should not be in a relationship with anyone you work with."

48. After being told about her relationship with co-worker, Defendant, Scott Waters contacted Craig John and asked if he and the Plaintiff were in a dating relationship.

49. Plaintiff had advised Department Head, Tom Curcio about her relationship with Craig John.

50. The response Plaintiff received from Mr. Curcio was, "I am happy for you. How did Scott take it."

51. Defendant Waters flirtatious actions continued.

52. In January of 2019, Defendant, Scott Waters was promoted by the Defendant, County of Ocean to the position of Director of Roads and Bridges.

53. As the Director, Defendant Waters still continued his sexual advances toward the Plaintiff.

54. In February 2020, the Defendant, Scott Waters was going on vacation to Fort Meyers, Florida.

55. Before leaving, Defendant, Scott Waters grabbed the Plaintiff, hugged and kissed her.

56. After hugging and kissing the Plaintiff, Defendant Waters stated, "I'll see you when I get back."

57. When Defendant Waters returned from his vacation, so did the sexual harassment directed toward the Plaintiff.

58. Plaintiff fearing for the loss of her job, did not report the actions of the Defendant, Scott Waters.

6

59. Plaintiff did ultimately confide in a co-worker and a friend that was assigned to another department in the County of Ocean, Michelle Henry.

60. At the time that Plaintiff had a conversation with Michelle Henry, she had received no training during her years of employment with the Defendant, County of Ocean in the area of harassment and/or discrimination.

61. Plaintiff told Michelle Henry about some of the sexual harassment she had been subjected to.

62. On or about September 17, 2020, Michelle Henry in her position with the County of Ocean, reported what she had been told by the Plaintiff to Michael Fiure, Assistant County Administrator.

63. Michelle Henry, who holds a management position called Plaintiff on her cell phone to tell her based on the position she holds she felt the need to protect Plaintiff.

64. Michelle Henry asked that Plaintiff meet her in the parking garage. Ms. Henry advised Plaintiff that she reported the sexual harassment she had been subjected to by Defendant, Scott Waters to Assistant Business Administrator, Michael Fiure.

65. As a result of the reporting by Michelle Henry, Plaintiff, Randi Zupko was contacted by the Defendant, Robert Greitz.

66. On or about September 21, 2020, Plaintiff was scheduled to meet with Defendant, Robert Greitz.

67. Despite Plaintiff's apprehension and fear of retaliation, she appeared for the meeting with Defendant, Robert Greitz and Trish Burke.

7

68. When Plaintiff appeared for the meeting, Defendant, Robert Greitz stated, "Are you sure you want to do this because the minute you walk out the door, calls will start being made."

69. However, this was not the only offensive statement made by Defendant, Robert Greitz. Defendant Greitz stated to the Plaintiff, "I know you have a disability but you look fine to me."

70. Upon information and belief, Defendant Greitz was attempting to protect Defendant, Scott Waters.

71. Defendant, County of Ocean through its agents and/or employees allegedly conducted an investigation.

72. Since the Defendant, County of Ocean failed to train the employees, Plaintiff had additional questions for Defendant, Robert Greitz.

73. On or about September 25, 2020, Plaintiff contacted Defendant, Robert Greitz about employees in the Roads Department.

74. Plaintiff was extremely stressed and had taken the day off.

75. Specifically, Plaintiff reported that individuals in the Roads Department were contacting staff in the office and requiring them to punch in or out for them.

76. Plaintiff was concerned that this was unlawful and against public policy.

77. On this same date upon information and belief, Defendant, Scott Waters had a meeting in Manahawkin with employees Rhys Worthy and Art Reece regarding questions raised by Plaintiff to Defendant, Robert Greitz.

78. Upon information and belief, Defendant, Robert Greitz immediately contacted Defendant, Scott Waters.

79. Rhys Worthy held the position of General Supervisor for the Defendant, County of Ocean.

80. Art Reece now holds the position of Assistant City Road Supervisor for the Defendant, County of Ocean.

81. During this meeting, Defendant, Scott Waters discussed getting rid of the Plaintiff.

82. Ronnie Newman, an employee of Defendant, County of Ocean sent the Plaintiff text messages stating he could not believe what he was hearing.

83. Upon information and belief, Art Reece referred to Plaintiff as "deceitful" and a "fucking cunt."

84. Plaintiff immediately called Bob Milania, County Investigator, Risk Management to report what was transpiring.

85. On or about September 28, 2020 at 8:32 a.m., Plaintiff emailed Defendant, Robert Greitz with the text messaging she had received from Ronnie Newman that had heard the meeting that took place as described above.

86. Defendants, County of Ocean and Robert Greitz failed to conduct any investigation into the allegations made by Plaintiff.

87. Defendants, County of Ocean and Robert Greitz in possession of these text messages, failed to conduct an investigation into the meeting that transpired in Manahawkin.

88. Instead, just hours after receiving the email with the disturbing text messaging exchange, Defendant, Robert Greitz sent Defendant, Scott Waters an email with the subject line – "Punching out at 3PM and "working through lunch"."

89. The email stated as follows: "Scott – Also, please make sure all of your employees with the Department swipe in/out. The only employee within the department

9

exempt from swiping in/out is You as the department head.  All other employees must swipe in/out every day.

If there is a rare situation that would make it impossible to swipe in/out, you must authorize the non-swipe.  An issue with employees swiping has recently been brought to my attention, and I wanted to address it right away.

Any questions, please let me know.

-Rob"

90. Upon information and belief, Defendant, Robert Greitz was once again attempting to protect and insulate Defendant, Scott Waters.

91. On or about November 25, 2020, Plaintiff was advised that the investigation of the sexual harassment claim revealed " no violation".

92. Plaintiff immediately began being retaliated against as she feared if she reported it.

93. On or about November 25, 2020, Plaintiff was approached by Defendant, Robert Greitz about transferring her to another "work location".

94. Plaintiff expressed to Defendant, Greitz that she like the job that she was doing with the County and did not want to transfer.

95. Despite Plaintiff's position that she did not want to transfer to another work location, the Defendant, County of Ocean through their employees, Defendant, Scott Waters and Defendant, Robert Greitz transferred the Plaintiff in retaliation for reporting all of the acts above.

96. On or about January 25, 2021, the Plaintiff was transferred to the Bridge Department.

97. Defendant, Scott Waters was still the "boss" over the Plaintiff.

10

98. On or about March 4, 2021, the employee performance evaluation of the Plaintiff was completed by James Gomulka, Assistant County Road Supervisor.

99. Plaintiff in the past had received all "outstanding" in prior yearly employment evaluations.

100. Defendant, Scott Waters as the department head, failed to sign off on Plaintiff's 2020 employee evaluation.

101. On or about March 17, 2021, Plaintiff received notice from her Supervisor, Michael Reina regarding Mandatory Training – Anti-Discrimination/Harassment.

102. An email was sent from Defendant, Robert Greitz to all Department Heads on or about March 16, 2021 for department heads, division directors, and supervisors to undergo Anti-Sexual Harassment and Discrimination Training for supervisors.

103. This is the first time, Plaintiff was made aware of any training in the area of sexual harassment and discrimination.

104. On or about April 14, 2021, James Gomulka signs off in the position of department head on Plaintiff's yearly employment evaluation.

105. After the report of sexual harassment and whistleblowing activity of the Plaintiff, the Defendants continued to retaliate against the Plaintiff.

106. On or about March 9, 2021, the employee performance evaluation of the Plaintiff was completed by the Superintendent of the Bridge Department, Michael Reina.

107. After receiving the written evaluation and prior to the department head's signature, the Plaintiff is provided with the opportunity to provide comments.

11

108.    On March 10, 2022, Plaintiff reported in part, "It has been a retaliatory working relationship with Mr. Waters, Mr. Reece and Ms. Specht since being transferred in January 2021.  All calls and emails are only directed to my coworker, Jodi Macomber."

109.    Plaintiff further reports in the comment section of her 2021 evaluation, "I also have spoken with many people within our department as well as other departments and I am told that they are not allowed to call me, speak to me, or send me emails."

110.    Once again, the department head, Defendant, Scott Waters fails to comment or sign the performance evaluation of the Plaintiff.

111.    Plaintiff received a copy of the evaluation that states, "No D.H. (illegible) OK by RAG".

112.    On May 3, 2022, the Plaintiff emailed, Defendant, Robert Greitz and inquired as to why she had not been questioned regarding her comments in her evaluation.

113.    Plaintiff states in this email, "I have been in Bridges for over a year now and the retaliation still continues."

114.    Upon information and belief, Defendant, Robert Greitz was continuing to protect the actions of the Defendants, County of Ocean and Scott Waters.

115.    Plaintiff did not receive any response from Defendant, Robert Greitz until June 16, 2022.

116.    When Defendant, Robert Greitz ultimately contacts the Plaintiff, he provides her with a list of questions.

12

117. Plaintiff has already provided documentation to the Defendant, Robert Greitz in the past and nothing was done.

118. In June of 2022, Plaintiff became aware that Donna Specht, the Road Department Buyer had completed purchase orders for Defendant, Scott Waters that Plaintiff deemed to be unlawful and against public policy.

119. Upon information and belief, there have been no underwater inspections performed by any Ocean County Employee for the past ten years.

120. Upon information and belief, there have been no dive services performed by any Ocean County Employee for the past ten years.

121. However, Cruisin' Tikis Long Beach Island had advertised that they were hiring Captains.

122. Cruisin' Tikis Long Beach Island advertisement stated, "Must have: USCG approved 6 pack license, able to work weekends, personable with guests, current First Aid CPR and pre-employment drug test."

123. Upon information and belief, the only county employees that have received scuba training and certifications paid for by the Defendant, County of Ocean within the past ten years are: Defendant, Scott Waters; John Reiser, General Supervisor of Roads and Ethan Tonnesen, Equipment Operator.

124. Upon information and belief, the only county employees that have received training/classes for a USCG Master Class license paid for by Ocean County within the last ten years are: Defendant, Scott Waters; Douglas Walker, Road Repair Supervisor; and Jim Scott, Heavy Equipment Operator.

125.    On or about August 5, 2022, the Defendant, County of Ocean authorized payment in the amount of $1,990.00 to John Stypulkoski for the USCG Master Class for Defendant, Scott Waters and Douglas Walker.

126.    On or about May 18, 2022, the Defendant, County of Ocean authorized payment in the amount of $6,000 to Atlantic Divers, LLC for scuba training and certifications for Defendant, Scott Waters, John Reiser and Ethan Tonnesen.

127.    Upon information and belief, Ethan Tonnesen is in a dating relationship with Defendant, Scott Waters daughter, Krista Waters.

128.    On or about July 6, 2022, the Defendant, County of Ocean authorized a payment to Sea Gear Marine Supply Inc. in the amount of $450 for "Miscellaneous dive supplies."

129.    On or about July 6, 2022, the Defendant, County of Ocean authorized a payment to Atlantic Divers LLC in the amount of $12,929.52 for dive equipment including three Shearwater Peregrine Wrist watches.

130.    On or about August 3, 2022, the Defendant, County of Ocean authorized a payment to American Diving Supply in the amount of $2,124.63.

131.    Upon information and belief, Defendant, Scott Waters has been operating a boat consistent with the advertisement Cruisin' Tikis Long Beach Island.  (Exhibit A)

132.    On or about July 14, 2022 Randi Zupko sent Defendant, Scott Waters a text message that stated, "Here are the 3 certified divers.  Wow good for you."

133.    On or about July 19, 2022, Plaintiff contacted the Ocean County Prosecutor's Office to report what she deemed to be unlawful and against public policy.

134.    On or about August 15, 2022, an OPRA Request was submitted by my attorney to Defendant, County of Ocean on my behalf. (Exhibit B)

135.    On or about August 22, 2022, a second OPRA Request was submitted by my attorney to Defendant, County of Ocean on my behalf (Exhibit C)

136.    On or about August 23, 2022, Plaintiff advised her supervisor Mike Reina and emailed the Ocean County IT Help Desk at 7:38 a.m. that she was having issues with the financial program, CGI.

137.    Plaintiff reported to IT the message for the program stated, "User ID is locked, contact admin."

138.    After Plaintiff inquired further, she was advised that her CGI Financial account had been disabled, "per Scott Waters request".

139.    Upon information and belief, Defendant, Scott Waters has been making defamatory statements about the Plaintiff.

140.    On or about August 24, 2022 at approximately 7:10 a.m., Plaintiff overheard a telephone call made by Defendant, Scott Waters to Superintendent, of Bridges, Mike Reina.

141.    During this telephone call, Plaintiff heard Superintendent Reina state, "Who is fucking shit up and trying to make me look bad?  Why would she do that?"

142.    This conversation between Defendant, Scott Waters and Superintendent Reina also included the removal of old dive equipment.

143.    Plaintiff was also advised by the Superintendent of Bridge, Mike Reena after the OPRA request was sent on my behalf, Defendant, Scott Waters stated to him, "Does she know who she's fucking with – me, Donna and Carl."

15

144.    Plaintiff has not received a promotion since 2014 despite numerous other employees receiving.

145.    Defendants have eliminated much of her job duties and responsibilities as a supervisor.

146.    Defendants continue to retaliate against the Plaintiff.

147.    Defendant, County of Ocean has been the subject of prior lawsuits involving sexual harassment.

148.    Despite the prior lawsuit filed in 2014 including Rosemary Mennona v. Joseph Vicari, et al., Defendant, County of Ocean failed to provide training to all of their employees.

149.    Upon information and belief, Defendant, County of Ocean did not provide mandatory training for their department heads or supervisors until 2021.

## COUNT I
### *Sexual Harassment Under New Jersey's Law Against Discrimination*

150.    Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

151.    Defendants have discriminated against Plaintiff in violation of the New Jersey Law Against Discrimination by subjecting her to disparate treatment because of her gender.

152.    As a direct and proximate result of the Defendant's unlawful discriminatory conduction in violation of the New Jersey Law Against Discrimination, Plaintiff has

suffered and continues to suffer financial and economic damages as well as severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

153.    Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of the New Jersey Law Against Discrimination, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants upon her claim for compensatory damages, punitive damages, attorney's fees, costs of suit, and such other relief as may be equitable and just.

## COUNT II
### Retaliatory Harassment Under New Jersey's Law Against Discrimination

154.    Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

155.    For the reasons set forth above, Defendants are liable to Plaintiff for retaliatory harassment in violation of the Law Against Discrimination.

**WHEREFORE**, Plaintiff demands judgment against Defendants upon her claim for compensatory damages, punitive damages, attorney's fees, costs of suit, and such other relief as may be equitable and just.

## COUNT III

*Reprisal Under New Jersey's Law Against Discrimination*

156.    Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

157.    For the reasons set forth above, the Defendants conduct constitutes retaliation under the Law Against Discrimination and renders them liable to plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants upon her claim for compensatory damages, punitive damages, attorney's fees, costs of suit, and such other relief as may be equitable and just.

## COUNT IV
*Violation of New Jersey's Civil Rights Act, N.J.S.A. 10:6-1 to -2*

158.    Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

159.    Defendants have deprived the Plaintiff of substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States.

160.    Defendants have deprived the Plaintiff of substantive rights, privileges or immunities secured by the Constitution or laws of the State of New Jersey.

161.    Defendants have interfered with Plaintiff's exercise of enjoyment of substantive rights, privileges or immunities by threats, intimidation, or coercion.

162.    Defendants acted under color of state law at all times mentioned herein.

**WHEREFORE**, Plaintiff demands judgment against Defendants upon her claim for compensatory damages, punitive damages, attorney's fees, costs of suit, and such other relief as may be equitable and just.

## COUNT V
### *Deprivation of Federally Protected Rights Under 42 U.S.C.A. §1983*

163.    Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

**WHEREFORE**, Plaintiff demands judgment against Defendants upon her claim for compensatory damages, punitive damages, attorney's fees, costs of suit, and such other relief as may be equitable and just.

## COUNT VI
### *Deprivation of Federally Protected Rights Under 42 U.S.C.A. §1983*
### *Monell Claim*

164.    Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

165.    Defendant, County of Ocean is liable for the deprivation of Plaintiff's federally protected rights, as described in the foregoing causes of action.

166.    At all relevant times, the Defendant, County of Ocean was responsible for the training of all employees in the County of Ocean in the prevention of discrimination pursuant to the Law Against Discrimination.

167. Defendant has repeatedly and knowingly failed to enforce the laws of the United States, the State of New Jersey and the regulations of the County of Ocean, thereby creating an atmosphere of lawlessness, whereby actions on violation for the law set forth herein are condoned and justified by their superiors.

168. At the times described above, Defendant has developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the County of Ocean.

169. It was the policy and/or custom of the Defendant, County of Ocean and the other Defendants herein to inadequately and improperly supervise and train its employees and to inadequately and improperly investigate complaints made by employees.

170. As a result of the above-described policies and customs, individuals such as Defendants, Scott Waters and Robert Greitz believed that their actions would not be properly monitored by supervisory personnel and that misconduct in connection with employment matters would not be investigated or sanctioned but – would be tolerated.

171. By reason of the aforesaid violation of Plaintiff rights, Plaintiff is entitled to recover damages under 42 U.S.C. §1983.

**WHEREFORE**, Plaintiff demands judgment against Defendant, County of Ocean upon her claim for compensatory damages, punitive damages, attorney's fees, costs of suit, and such other relief as may be equitable and just.

## COUNT VII
*Violation of New Jersey Conscientious Employee Protection Act*

20

*(Reporting of Time)*

172.    Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

173.    The same day Plaintiff reported what she believed to be unlawful and in violation of public policy, Defendant, Scott Waters made it clear that he wanted to get rid of the Plaintiff.

174.    The retaliatory conduct in question was undertaken by the Defendants.

175.    The disclosure of all of the above constituted disclosures protected under New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA").

176.    CEPA was designed to protect employee "whistleblowers." Pursuant to CEPA, it is unlawful for employers to take adverse employment action against employees who disclose, object to, or refuse to participate in certain actions that the employees reasonably believes are illegal or in violation of public policy.

177.    Plaintiff's transfer to the Bridges Department under the same Department Head, Defendant, Scott Waters was a direct violation of the provisions of CEPA.

178.    As a result of the wrongful conduct described above, Plaintiff has suffered and will continue to suffer severe economic and non-economic damages. These damages include, but are not limited to, loss of past and future wages and benefits, diminution of pension benefits, loss of accrues and unpaid sick time and other economic losses. Additionally, Plaintiff has suffered various non-economic losses and damages including, but not limited to, emotional distress as a result of the unlawful retaliatory by the Defendant.

21

**WHEREFORE**, Plaintiff demands judgment against Defendants upon his claim for compensatory damages, punitive damages, costs of suit, and such other relief as may be equitable and just.

## COUNT VIII
### *Violation of New Jersey Conscientious Employee Protection Act*
### *(Reporting of County paying for certifications & scuba equipment)*

179.    Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

180.    Plaintiff reported what she believed to be unlawful and in violation of public policy in the matter of certifications and scuba equipment being purchased by the Defendants.

181.    After Plaintiff's OPRA request was submitted by her counsel, Defendant Waters began retaliating against Plaintiff by making threatening and derogatory statements.

182.    Plaintiff has had job duties and responsibilities taken away from her.

183.    Plaintiff has been isolated in the Bridges Department.

184.    The retaliatory conduct in question was undertaken by the Defendants.

185.    The disclosure of all of the above constituted disclosures protected under New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA").

186.    CEPA was designed to protect employee "whistleblowers." Pursuant to CEPA, it is unlawful for employers to take adverse employment action against

22

employees who disclose, object to, or refuse to participate in certain actions that the employees reasonably believes are illegal or in violation of public policy.

187.    As a result of the wrongful conduct described above, Plaintiff has suffered and will continue to suffer severe economic and non-economic damages. These damages include, but are not limited to, loss of past and future wages and benefits, diminution of pension benefits, loss of accrues and unpaid sick time and other economic losses. Additionally, Plaintiff has suffered various non-economic losses and damages including, but not limited to, emotional distress as a result of the unlawful retaliatory by the Defendant.

**WHEREFORE**, Plaintiff demands judgment against Defendants upon his claim for compensatory damages, punitive damages, costs of suit, and such other relief as may be equitable and just.

## COUNT IV
### *Defamation*

188.    Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

189.    Defendant, Scott Waters in his individual capacity, made false statements about Plaintiff.

190.    Defendant, Scott Waters made false statements to third parties regarding Plaintiff.

191.    Defendant, Scott Waters made these defamatory statements about the Plaintiff to humiliate, embarrass and retaliate against her.

23

192.     Plaintiff suffered damages as the result of Defendant, Scott Waters statements.

**WHEREFORE,** Plaintiff demands judgment against Defendant, Scott Waters upon her claim for compensatory damages, punitive damages, attorney fees, costs of suit, and such other relief as may be equitable and just.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, notice is hereby given that Tracy Riley, Esquire and Michael Riley, Esquire are designated as trial counsel for the within matter.

## CERTIFICATION PURSUANT TO RULE 4:5-1

The undersigned, an attorney at law in the State of New Jersey, hereby certifies that, to the best of my present knowledge, the within matter is not the subject of any other actions or arbitration proceeding, nor are any such other actions or arbitration proceedings presently contemplated in this matter.

## NOTICE OF LITIGATION HOLD

The parties are hereby required to preserve all physical and electronic information that may be relevant to the issues to be raised, including but not limited to, Plaintiff's employment, Plaintiff's cause of action, request for relief, to any defenses to same, and pertaining to any party, including but not limited to, electronic data storage, close circuit tv footages, digital images, computer images, cache memory, searchable data, emails, spreadsheets, employment files, memos, text messages and any and all online social or work related websites, entries on social

24

networking sites (including but not limited to, Facebook, Twitter, Linkedin, etc.) and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Failure to do so may result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.

The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation. You are on notice of litigation and therefore have an obligation to suspend your routine document retention/destruction policy and put in place a "litigation hold" to ensure preservation of relevant documents."

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all of the triable issues of this complaint, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Respectfully submitted,

**LAW OFFICES OF RILEY & RILEY**

/s/ Tracy L. Riley
Tracy L. Riley, Esquire

/s/ Michael E. Riley
Michael E. Riley, Esquire

Dated: October 4, 2022

25

26