**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RANDI ZUPKO, | |
| Plaintiff, | Civil Action No. 22-5872 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| COUNTY OF OCEAN *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

     This matter comes before the Court on a Motion to Dismiss Plaintiff Randi Zupko's ("Plaintiff") Amended Complaint (ECF No. 13) filed by Defendants County of Ocean (the "County"), Scott Waters ("Waters"), and Robert Greitz ("Greitz") (collectively, "Defendants"[1]). (ECF No. 17.) Plaintiff opposed (ECF No. 21), and Defendants replied (ECF No. 22). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is granted.

---

[1] Plaintiff's Amended Complaint also identifies fictitious Defendants "John Doe, #1-10," and "Jane Doe, #1-10." (Am. Compl. ¶ 5.)

I. **BACKGROUND**[2]

A. **The Parties**

Plaintiff is a resident of Ocean County, New Jersey and has been employed by the County in its "Roads Department" since August 2004. (Am. Compl. ¶¶ 1, 10-11.[3]) The County is a government entity chartered by the State of New Jersey. (*Id.* ¶ 2.) Waters is the Director of Roads and Bridges for Ocean County and Greitz is the Director of Employee Relations for Ocean County. (*Id.* ¶¶ 3-4.)

B. **Plaintiff's Allegations**

Plaintiff raises the following causes of action: (1) claims under the New Jersey Law Against Discrimination ("NJLAD") (Counts I-III); (2) a claim under the New Jersey Civil Rights Act ("NJCRA") (Count IV); (3) claims under 42 U.S.C. § 1983 (Counts V and VI); (4) claims under the New Jersey Conscientious Employee Protection Act ("CEPA") (Counts VII and VIII); and (5) a defamation claim (Count IX). (*See generally id.*) The Court summarizes the relevant allegations below.

   1. *Allegations of Sexual Abuse/Harassment*

Plaintiff alleges that Waters, a former general supervisor in the County's Roads Department, engaged in sexually flirtatious actions towards her. (*Id.* ¶¶ 15-16.) Specifically, Plaintiff alleges that: (1) in 2014, Waters approached Plaintiff and "insisted that she fix his collar

---

[2] This Court previously analyzed the facts giving rise to this action when it addressed Defendants' first Motion for Summary Judgment (ECF No. 5), which the Court construed as a Motion to Dismiss. (*See* Op., ECF No. 11.) Thus, the facts are well known to the parties. In the interest of efficiency, the Court will present an abbreviated version of Plaintiff's allegations that are relevant to Defendant's Motion.

[3] Plaintiff's Amended Complaint filed in ECF No. 13 duplicates paragraph numbers 137 through 149. (*See* Am. Compl.) The Court, therefore, cites to Plaintiff's Amended Complaint filed in ECF No. 21-3, which complies with Local Civil Rule 15.1(b)(2) and has non-duplicating paragraph numbers. The Court notes that there are no substantive changes between the two filed Amended Complaints.

for him" (*id.* ¶ 17); (2) in 2015, Waters gave Plaintiff a pair of pink boots and sent Plaintiff a text message asking her to send him a picture of Plaintiff wearing the boots with nothing else on (*id.* ¶¶ 19, 21); and (3) in 2016, Waters attempted to kiss Plaintiff at a work conference in Atlantic City, New Jersey (*id.* ¶¶ 23-32). Thereafter, despite her rejection of his advances, Plaintiff alleges Waters continued to sexually harass her. (*Id.* ¶¶ 35-51.)

In January 2019, Waters was promoted to Director of Roads and Bridges for the County. (*Id.* ¶¶ 52-53.) Plaintiff alleges that in February 2020, Waters hugged and kissed her without consent. (*Id.* ¶¶ 54-55.) Plaintiff alleges that on September 14, 2020, Waters spoke with her by her office and then "stormed away and yelled down the hallway" that he was "sick of her." (*Id.* ¶¶ 62-63.) At an unspecified date thereafter, Plaintiff disclosed Waters's alleged acts of sexual harassment to a co-worker in a different department in the County, Michelle Henry ("Henry"). (*Id.* ¶¶ 64, 66.) On or around September 17, 2020, Henry reported Waters's alleged sexual harassment against Plaintiff to the assistant County administrator. (*Id.* ¶ 67.) As a result of Henry's report, Greitz scheduled a meeting with Plaintiff later that month, on or around September 21, 2020. (*Id.* ¶¶ 70-71.)[4]

The County has a policy against Discrimination and Harassment, originally adopted in August 1993, which states that "[t]raining shall be provided to all employees, including supervisors, at least every-other year." (*Id.* ¶¶ 78-79.) Plaintiff alleges, however, that she received only six different trainings, including sexual harassment prevention trainings, during her nineteen years of employment with the County. (*Id.* ¶¶ 76-77.) Plaintiff appears to aver, therefore, that other

---

[4] Plaintiff does not provide further information about the meeting's agenda or what transpired at the meeting, other than that Greitz allegedly made several offensive statements regarding Plaintiff's disability (vestibular neuritis and labyrinthitis). (*See generally* Am. Compl.; *see also id.* ¶¶ 14, 72, 75.) For example, Greitz allegedly stated, "I know you have a disability[,] but you look fine to me[,]" and asked whether Plaintiff was "sure [she] wanted to do this because . . . calls will start being made." (*Id.* ¶¶ 73-74.)

employees, like Waters and Greitz, did not receive regular training on sexual harassment. (*See id* ¶¶ 80-83.)

> 2.   *Alleged Retaliatory Conduct*

On or about November 25, 2020, Plaintiff was advised that an investigation into her sexual harassment claim against Waters revealed "no violation." (*Id.* ¶ 104.) Plaintiff alleges that Defendants retaliated against her subsequent to her sexual harassment report. (*Id.* ¶ 105.) On or about January 25, 2021, Plaintiff was transferred to the "Bridge Department" despite expressing that she did not want to be transferred. (*Id.* ¶¶ 106-09.) Plaintiff alleges that in March 2022, she indicated in an internal evaluation mechanism that there "has been a retaliatory working relationship with [Waters and others] since being transferred in January 2021" and that she has not been included in internal communications and correspondences. (*Id.* ¶¶ 120-22.) Plaintiff states that Waters did not comment or sign off on Plaintiff's evaluation form as required. (*Id.* ¶¶ 113, 123.)

On May 3, 2022, Plaintiff sent correspondence to Greitz, asking why she had not been questioned about her comments in her evaluation. (*Id.* ¶ 125.) On June 16, 2022, Greitz responded by "provid[ing] her with a list of questions." (*Id.* ¶¶ 128-29.) Plaintiff alleges that no other action was taken. (*Id.* ¶ 130.)

Finally, Plaintiff alleges she has not received a promotion since 2014 and that Defendants have eliminated much of her job duties and responsibilities as a supervisor. (*Id.* ¶¶ 157-58.)

**C.    Procedural History**

On October 4, 2022, Plaintiff commenced this action in federal court. (Compl., ECF No. 1.) In lieu of an answer to the Complaint, Defendants filed a Motion for Summary Judgment (ECF No. 5), which the Court construed as a Motion to Dismiss. (*See* Op., ECF No. 11.) On May 26,

2023, this Court issued a Memorandum Opinion and Order granting Defendants' Motion and dismissing Plaintiff's Complaint without prejudice. (Op.; Order, ECF No. 12.)

Plaintiff subsequently filed an Amended Complaint, amending only her claims arising under federal law. (*Compare* Compl. *with* Am. Compl.) In lieu of an answer, Defendants filed a renewed Motion to Dismiss (ECF No. 17). Plaintiffs opposed (ECF No. 21), and Defendants replied (ECF No. 22).

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2)[5] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On

---

[5] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.   DISCUSSION

### A.   Federal Claims Under 42 U.S.C. § 1983

Plaintiff brings forth a claim of "sexual discrimination and retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment" (Count V), and a *Monell* claim based on the County's "failure to train and investigate claims of sexual discrimination" (Count VI) against Defendants under 42 U.S.C. § 1983. (Am. Compl. ¶¶ 176-92.)

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. To state a cognizable claim under § 1983, a plaintiff is required to adequately allege: (1) plaintiff was deprived of a "right or privilege secured by the Constitution or the laws of the United States" and (2) plaintiff was deprived of her rights by a person acting under the color of state law. *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 464 (3d Cir. 1989). Here, Plaintiff invokes the rights and privileges secured by the Equal Protection Clause under the Fourteenth Amendment. (Am. Compl. ¶¶ 176-82.) The Fourteenth Amendment Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Construing the facts and drawing all reasonable inferences in Plaintiff's favor, the Court finds that the Amended Complaint still fails to plead facts sufficient to sustain her claims under § 1983. The Court addresses each of Plaintiff's § 1983 claims in turn.

### 1.   "Sexual Discrimination"[6] Claim (Count V): Statute of Limitations

In its previous Opinion, the Court dismissed Plaintiff's § 1983 claims relating to sexual harassment as time-barred because the events predated October 4, 2020[7] and Plaintiff failed to adequately allege that Defendants' conduct implicated the continuing violation doctrine. (Op. 5-6.) To establish whether an act is continuous for the doctrine to apply, the Court must consider: "(1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently." *Cibula v. Fox*, 570 F. App'x 129, 135-36 (3d Cir. 2014) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-67 (3d Cir. 2013)). In short, this Court found that Plaintiff's Complaint alleged "only a handful of specific incidents of sexual harassment in each year from 2014 to 2016" with the final incident of sexual harassment alleged to have taken place in February 2020. (Op. 5-6.) In doing so, this Court found that allegations of misconduct from October 4, 2020 to 2022 related to retaliation and defamation were "not part of the same subject

---

[6] The Court notes that Plaintiff alleges a claim of "sexual discrimination," as opposed to a claim of "sexual harassment[,]" which would appear to be more relevant to the facts of this case. (Am. Compl. ¶¶ 176-92; *see* Op. 5 (construing Plaintiff's allegations to raise a claim of sexual harassment).) *See also Brennan v. City of Phila.*, No. 18-1417, 2018 WL 4566134, at *5 (E.D. Pa. Sept. 21, 2018) ("Claims of discrimination under the Equal Protection Clause are actionable under 42 U.S.C. § 1983." (citing *Oliveira v. Township of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002)); *Hiester v. Fischer*, 113 F. Supp. 2d 742, 747 (E.D. Pa. 2000) ("The essence of a sex discrimination claim brought under the Equal Protection Clause is not that a female plaintiff was treated badly, but rather that she was treated differently than similarly situated males because she is a woman."). Regardless of whether Plaintiff meant to allege a sexual harassment claim, the Court need not reach the merits of the claim because the claims are time-barred, as explained below.

[7] As the previous Opinion stated, the applicable statute of limitations for Plaintiff's § 1983 claims is two years—therefore, Plaintiff's § 1983 claims based on injuries predating October 4, 2020, the date Plaintiff's Complaint was filed, are barred. (Op. 5-6.)

matter as the sexual harassment alleged prior to [October 4,] 2020." (*Id.* at 6.) The Court, accordingly, dismissed Plaintiff's sexual harassment claim. (*Id.*)

Plaintiff maintains that her allegations regarding events that occurred prior to October 4, 2020 explain and contextualize Defendants' "retaliatory acts . . . regard[ing] . . . conduct occurring within the statutory period." (Pl.'s Opp'n Br. 3-4, 16.)  Specifically, Plaintiff admits that although "a series of discriminatory acts . . . occurred outside of the statutory period" and thus are "not directly actionable because they occurred prior to October 4, 2020, these allegations are essential as they establish the background for Defendant's retaliation and acts of discrimination." (*Id.* at 16.)

Certainly, a court may consider events to the extent that they support claims of constitutional violations as background facts for events that are not time-barred. *See Rankin v. Smithburger*, No. 12-1373, 2013 WL 3550894, at *4 (W.D. Pa. July 11, 2013). To clarify again, however, the allegations of misconduct from after October 4, 2020 do not relate to sexual harassment or discrimination incidents and thus such injuries cannot form the basis for her claims under § 1983. (Op. 6.) Accordingly, to the extent Plaintiff attempts to re-allege a claim of sexual harassment or discrimination under § 1983, the Court again finds that such a claim is time-barred as the relevant events underlying her claim occurred before October 4, 2020.

### 2.   *Retaliation Claim Under 42 U.S.C. § 1983 (Count V)*

Plaintiff alleges that Defendants, in their official capacities and through their personal involvement, engaged in acts of sexual discrimination/harassment, retaliation, and reprisal by: (1) transferring her to other departments; (2) failing to properly conduct performance reviews; (3) failing to investigate claims of retaliation and reprisal; and (4) acts of defamation. (Am. Compl. ¶¶ 177-80.) In asserting a 42 U.S.C. § 1983 claim, Plaintiff alleges that Defendants' retaliatory acts are in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 176-82.)

Yet, "a claim for retaliation, which was created by Title VII and is not recognized under constitutional principles, may not be pursued through Section 1983." *Bair v. City of Atl. City*, 100 F. Supp. 2d 262, 267 n.3 (D.N.J. 2000) (citations omitted); *Stubbs v. Nutter*, No. 10-3200, 2010 WL 3421015, at *3 (E.D. Pa. Aug. 30, 2010) (stating that the Third Circuit has observed that a retaliation claim "does not implicate the Equal Protection Clause" (quoting *Thomas v. Indep. Township*, 463 F.3d 285, 298 n.6 (3d Cir. 2006)); *see also Brennan*, 2018 WL 4566134, at *5 (dismissing plaintiff's Fourteenth Amendment retaliation claims as unsupported by case law); *Marion v. City of Phila.*, 161 F. Supp. 2d 381, 386 n.2 (E.D. Pa. 2001) (noting that retaliation claims brought under § 1983 and the Equal Protection Clause must fail). It follows that Plaintiff's retaliation claim does not implicate the Equal Protection Clause and may not be pursued through Section 1983. Accordingly, Plaintiff's retaliation claim fails and must be dismissed.

3.     *Monell Claim Against the County Under 42 U.S.C. § 1983 (Count VI)*

Plaintiff asserts a *Monell* claim against the County, alleging that the County developed and maintained an unofficial custom of deliberate indifference to the constitutional rights of County employees by: (1) failing to adequately train its employees; (2) failing to properly investigate complaints of sexual harassment/discrimination made by employees; and (3) protecting officials such as Waters and Greitz from complaints of sexual harassment and retaliation. (Am. Compl. ¶¶ 183-92.) Specifically, Plaintiff alleges that the County did not provide mandatory training, such as for anti-discrimination or harassment, for their department heads or supervisors until March 2021. (*Id.* ¶¶ 114-16, 162.) In response, Defendants argue that Plaintiff fails yet again to state a proper *Monell* claim. (Defs.' Moving Br. 11-15.)

A successful *Monell* claim must adequately allege: "(1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom." *Wilson v. City of Phila.*, 177 F.

Supp. 3d 885, 908 (E.D. Pa. 2016) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 658, (1978)).

As an initial matter, a claim brought against a municipality under § 1983 can only be successful where the "municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell,* 436 U.S. at 694). Municipalities may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983." *Monell,* 436 U.S. at 694. "A plaintiff may establish a custom . . . by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson v. Abington Township*, 478 F.3d 144, 155-56 (3d Cir. 2007) (internal quotation marks and citation omitted). "[A] plaintiff must show that an official who has the power to make policy is responsible for . . . acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990).

Here, Plaintiff still fails to identify any County policymaker or decisionmaker whose deliberate decisions established a policy or custom that may give rise to municipal liability under § 1983. *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Simmons v. Philadelphia*, 947 F.2d 1042, 1064 (3d Cir. 1991) (stating that neither an unconstitutional municipal policy nor custom "[can] be established absent conscious decisionmaking or acquiescence in a longstanding custom or practice on the part of a policymaker." (citing *Andrews*, 895 F.2d at 1469)). In fact, Plaintiff admits that the "unofficial custom . . . has not been formally approved by an appropriate decisionmaker." (Am. Compl. ¶ 189.) Therefore, Plaintiff's claims must be dismissed for failure to plead facts regarding a municipal policymaker's conduct. *See*

*Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 239 (3d Cir. 2013) (affirming the district court's holding in dismissing municipal liability for inadequate investigation because "[t]here [was] no evidence that [the municipality] employs a policy or has a custom of conducting desultory investigations.").

The Court, however, considers Plaintiff's failure-to-train claim separately because the Third Circuit has found that a plaintiff need not allege an unconstitutional policy and thus the pleading requirements are different for such claims. *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation . . . under § 1983.")). A failure to train may be the basis for § 1983 municipal liability if the identified deficiency is causally connected to the constitutional deprivation. *City of Canton, Ohio*, 489 U.S. at 385-86. "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to '*deliberate indifference* to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (emphasis added). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). It follows that a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Brown*, 520 U.S. at 409) (stating that when policymakers "are on actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights, the [municipality or government entity] may be deemed deliberately indifferent if the policymakers choose to retain that program."). Notably, a plaintiff's claim is at its most "tenuous" when it "turns on [an allegation of] a failure to train." *Day v. Jackson*

*Township*, No. 10-4011, 2013 WL 394151, at *12 (D.N.J. Jan. 30, 2013) (quoting *Connick*, 563 U.S. at 61).

Here, Plaintiff's failure-to-train claim does not survive. First, Plaintiff fails to allege that the lack of training by the County causally led to Plaintiff's alleged injury. Courts have stated that it will not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training[,]" especially because even "adequately trained officers occasionally make mistakes." *See City of Canton, Ohio*, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Second, Plaintiff fails to adequately allege deliberate indifference by Defendants. Plaintiff appears to maintain that training was not provided to County employees despite prior lawsuits involving sexual harassment against the County, which seemingly should have notified the County that training was needed. (Am. Compl. ¶¶ 160-61.) Plaintiff, however, fails to plead how and why those prior lawsuits would have put the County "on notice that specific training was necessary to avoid this constitutional violation." *See Connick*, 563 U.S. at 63 (finding that the incidents plaintiff cited were "not similar to the violation at issue" in the case and thus could not have put the district attorney "on notice that specific training was necessary to avoid [the alleged] constitutional violation."). Finally, Plaintiff appears to maintain her assertion that the conduct of individual Defendants sufficiently demonstrates the "inadequate[] and improper[] supervis[ion] and train[ing]" by the County. (Am. Compl. ¶¶ 188-90.) Again, the Court cannot accept such conclusory assertions in the absence of supporting factual allegations. *See, e.g., Henderson*, 556 F. Supp. 3d at 535.

Accordingly, Count VI is dismissed for failure to state a claim.

B.     **Supplemental State Law Claims**

Plaintiff also raises several state law claims. (*See generally* Compl.; Op. 11-12.) The allegations as to the state law claims, which remain unchanged from the initial Complaint, relate to claims brought under the NJLAD (Counts I-III), NJCRA (Count IV), and CEPA (Counts VII and VIII). (*Compare* Compl. *with* Am. Compl.) Plaintiff also continues to assert a state-law claim for defamation (Count IX). (*Id.*)

For the same reasons this Court stated in its previous Opinion, having dismissed Plaintiff's federal claims, the Court finds that no judicial economy or convenience concerns favor exercising supplemental jurisdiction over Plaintiff's state law claims. (*See* Op. 11-12.) *See, e.g.*, 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir. 1993) (stating that in determining whether to exercise supplemental jurisdiction, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("The decision to retain or decline jurisdiction over state-law claims is discretionary."). The Court, therefore, does not address Defendants' remaining arguments in support of their motion regarding Plaintiff's state law claims.

IV.     **<u>CONCLUSION</u>**

For the reasons stated above, Defendants' Motion to Dismiss is granted. The Court will

enter an Order consistent with this Memorandum Opinion.


MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE